**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATURAL WELLNESS CENTERS OF AMERICA, INC., | No. C 12-05586 CW |
| Plaintiff, | ORDER DENYING MOTION TO DISMISS (Docket Nos. 19 & 20) AND REQUEST TO TRANSFER (Docket No. 10) |
| v. | |
| GOLDEN HEALTH PRODUCTS, INC., et al., | |
| Defendants. | |

Defendants Golden Health Products, Inc. and Mary Faith Hunt move to dismiss for lack of personal jurisdiction or to transfer to the Central District of Illinois. Plaintiff Natural Wellness Centers of America, Inc. opposes the motion and requests in the alternative that the case be transferred to the Central District of California. Having considered all of the parties' submissions and oral argument, the Court denies Defendants' motion to dismiss or transfer and denies Plaintiff's alternative request to transfer.

BACKGROUND

Plaintiff is a nutritional supplements company based in Laguna Hills, California. Declaration of John R. Taylor ¶¶ 3-6. In 2002, it launched its "PRO-BIOTICS PLUS" dietary supplement and began marketing and selling the supplement under that mark through websites and other retail channels. Id. ¶ 6. The company obtained a certificate of registration, Registration No. 2,767,607, from the U.S. Patent and Trademark Office (PTO) for the mark in September 2003. Id.

Defendant GHP is a nutritional supplements company based in Quincy, Illinois, that markets and sells its supplements over the internet. Declaration of Mary F. Hunt ¶¶ 2, 5. Its sole shareholder, director, and employee is Defendant Hunt, who operates the business out of her residence. Id. ¶ 4. GHP began selling certain supplements under the mark "Flora Probiotic Plus" in 2008. Id. ¶ 8. In February 2011, it obtained a certificate of registration for the mark, Registration No. 3,918,597, after the PTO "found no conflicting marks that would bar registration." Id. ¶¶ 12-14, Ex. A, PTO Records, at 2.

In November 2010, Plaintiff learned that Defendants were selling nutritional supplements under the "Flora Probiotic Plus" mark. Taylor Decl. ¶ 14. Believing that Defendants were infringing its "PRO-BIOTICS PLUS" mark, Plaintiff sent a cease-and-desist letter to one of Defendants' online retailers later that month. Id. The retailer responded that the mark belonged to one of its distributors and informed Defendants about Plaintiff's concerns. Id., Ex. 6.

On October 31, 2012, Plaintiff filed this action against Defendants alleging that they are infringing Plaintiff's "PRO-BIOTICS PLUS" mark. Docket No. 1, Compl. ¶ 1. On November 27, 2012, Plaintiff requested that this case be transferred to the Central District of California in order to preempt Defendants' forthcoming request for a transfer to the Central District of Illinois. Three days later, on November 30, Defendants moved to dismiss Plaintiff's complaint or, in the alternative, to transfer the action to the Central District of Illinois.

United States District Court
For the Northern District of California

LEGAL STANDARD

I.   Personal Jurisdiction

     Under Federal Rule of Civil Procedure 12(b)(2), a defendant
may move to dismiss an action for lack of personal jurisdiction.
The plaintiff then bears the burden of demonstrating that the
court has jurisdiction.  <u>Schwarzenegger v. Fred Martin Motor Co.</u>,
374 F.3d 797, 800 (9th Cir. 2004).  To satisfy this burden, the
plaintiff "need only demonstrate facts that if true would support
jurisdiction over the defendant."  <u>Ballard v. Savage</u>, 65 F.3d
1495, 1498 (9th Cir. 1995).  Uncontroverted allegations in the
complaint must be taken as true.  <u>AT & T v. Compagnie Bruxelles
Lambert</u>, 94 F.3d 586, 588 (9th Cir. 1996).  However, the court may
not assume the truth of such allegations if they are contradicted
by affidavit.  <u>Data Disc, Inc. v. Systems Tech. Assocs., Inc.</u>, 557
F.2d 1280, 1284 (9th Cir. 1977).  If the plaintiff also submits
admissible evidence, conflicts in the evidence must be resolved in
the plaintiff's favor.  <u>AT & T</u>, 94 F.3d at 588.

     There are two independent limitations on a court's power to
exercise personal jurisdiction over a non-resident defendant: the
applicable state personal jurisdiction rule and constitutional
principles of due process.  <u>Sher v. Johnson</u>, 911 F.2d 1357, 1361
(9th Cir. 1990).  Because California's jurisdictional statute is
co-extensive with federal due process requirements, jurisdictional
inquiries under state law and federal due process standards merge
into one analysis.  <u>Rano v. Sipa Press, Inc.</u>, 987 F.2d 580, 587
(9th Cir. 1993).  Under that analysis, the exercise of
jurisdiction over a non-resident defendant will violate due
process unless the defendant has established such "minimum

**United States District Court**
For the Northern District of California

3

contacts" with the forum state that the exercise of jurisdiction

"does not offend traditional notions of fair play and substantial

justice." <u>Int'l Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945).

The court's exercise of personal jurisdiction may be either

general or specific.  General jurisdiction exists when the

defendant maintains significant contacts with the forum state,

even if the cause of action is unrelated to those contacts.

<u>Helicopteros Nacionales de Colombia, S.A. v. Hall</u>, 466 U.S. 408,

414 (1984).  Specific jurisdiction, in contrast, exists when the

cause of action arises out of the defendant's contacts with the

forum state, even if those contacts are isolated and sporadic.

<u>Data Disc</u>, 557 F.2d at 1287 (9th Cir. 1977).

II.  Transfer of Venue

A district court may grant a discretionary change of venue

pursuant to 28 U.S.C. § 1404(a), which provides: "For the

convenience of parties and witnesses, in the interest of justice,

a district court may transfer any civil action to any other

district or division where it might have been brought."  The

statute identifies three basic factors for district courts to

consider in determining whether a case should be transferred:

(1) convenience of the parties; (2) convenience of the witnesses;

and (3) the interests of justice.  The Ninth Circuit has

identified numerous additional factors a court may consider in

determining whether a change of venue should be granted:

> (1) the location where the relevant agreements were
> negotiated and executed, (2) the state that is most
> familiar with the governing law, (3) the plaintiff's
> choice of forum, (4) the respective parties' contacts
> with the forum, (5) the contacts relating to the
> plaintiff's cause of action in the chosen forum, (6) the
> differences in the costs of litigation in the two

       forums, (7) the availability of compulsory process to
       compel attendance of unwilling non-party witnesses, and
       (8) the ease of access to sources of proof.

Jones v. GNC Franchising Inc., 211 F.3d 495, 498-99 (9th Cir.

2000).

       The burden is on the movant to show that the convenience of

parties and witnesses and the interests of justice require

transfer to another district.  Commodity Futures Trading Comm'n v.

Savage, 611 F.2d 270, 279 (9th Cir. 1979).  The Supreme Court has

ruled that the § 1404(a) analysis should be an "individualized,

case-by-case consideration of convenience and fairness."  Van

Dusen v. Barrack, 376 U.S. 612, 622 (1964).

                              DISCUSSION

I.   Personal Jurisdiction

       Defendants contend that their contacts with California are

too tenuous to support personal jurisdiction in this forum.  Hunt

highlights the fact that she resides and operates GHP in Illinois,

where the company is incorporated.  Hunt Decl. ¶¶ 19-20.  She has

never registered GHP as a foreign corporation in California or

designated an agent for service of process there.  Id.

Furthermore, neither she nor GHP owns or leases any property in

California.  Id. ¶¶ 16-17.  Hunt asserts that she has never

travelled to California for business, used the California court

system (outside of this case), or operated any facilities --

whether for GHP or any other company -- in California.  Id. ¶¶ 18,

27-28.

       Defendants' sole contact with California residents is through

GHP's websites, which are "equally accessible to all residents of

the United States and to persons worldwide."  Id. ¶¶ 25-26.  GHP

                                    5

United States District Court
For the Northern District of California

accepts orders through these sites and ships its products to customers around the country, including in California.  Id. ¶¶ 29-30.  Hunt estimates that fourteen percent of GHP's customers reside in California and that sales to these customers have generated roughly $191,000 in total revenue since April 2008.  Id. ¶ 30.  Plaintiff contends that this online commercial activity supports both general and specific jurisdiction in California.

A.   General Jurisdiction

A defendant implicitly consents to personal jurisdiction in a foreign state by undertaking "continuous and systematic" activities within that state.  Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 703-04 (1982). Here, Plaintiff argues that Defendants consented to this Court's jurisdiction by marketing and selling their products to California residents through their websites.

The Ninth Circuit rejected this argument in CollegeSource, Inc. v. AcademyOne, Inc., 653 F.3d 1066, 1075-76 (9th Cir. 2011).[1] There, the court held that the mere maintenance of an interactive website is insufficient to support general jurisdiction over a foreign defendant, even if residents of the forum state visit the website and make purchases through it.  Id. at 1075-76.  The court reasoned, "If the maintenance of an interactive website were sufficient to support general jurisdiction in every forum in which

---

[1] Plaintiff recently made the same argument in another case in this district.  The court, relying on CollegeSource, rejected the argument. Natural Wellness Ctrs., Inc. v. J.R. Andorin, Inc., 2012 WL 216578, at *4 (N.D. Cal.) ("The maintenance of an interactive business website that can be accessed by California residents is not sufficient to support general jurisdiction.").

users interacted with the website, 'the eventual demise of all restrictions on the personal jurisdiction of state courts' would be the inevitable result." Id. (citations omitted).

Although CollegeSource recognized that a defendant could be subject to general jurisdiction in a foreign court if its website generated "substantial and continuous commerce with the forum," id. at 1075, Defendants' online activities do not meet this standard. Their website has generated less than $191,000 in California sales revenue over the past four and a half years -- an average of roughly $3400 per month. These sales constitute less than fifteen percent of Defendants' total product sales. What's more, these sales have not prompted Defendants to travel to California, send sales agents there, or tailor their marketing towards the state in any way. Past Supreme Court and Ninth Circuit decisions make clear that Defendants' activities are insufficient to support general jurisdiction. Cf. Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 772, 779 & n.11 (1984) (finding no general jurisdiction despite defendant's circulation of 10,000-15,000 magazine sales in the forum state every month); Congoleum Corp. v. DLW Aktiengesellschaft, 729 F.2d 1240, 1242 (9th Cir. 1984) (refusing to find general jurisdiction even when defendants' forum-state activities included soliciting orders, promoting products to potential customers through the mail, maintaining a showroom display, and attending trade shows and sales meetings).

B.   Specific Jurisdiction

Courts in this circuit use a three-prong test to determine whether they may assert specific jurisdiction in a particular

United States District Court
For the Northern District of California

case: (1) the foreign defendant must purposefully direct its activities or consummate some transaction with the forum or a resident thereof, or perform some act by which it purposefully avails itself of the privilege of conducting business in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or results from the defendant's forum-related activities; and (3) the exercise of jurisdiction must be reasonable.  Lake v. Lake, 817 F.2d 1416, 1421 (9th Cir. 1987).  Each of these conditions must be satisfied to assert jurisdiction.  Insurance Co. of N. Am. v. Marina Salina Cruz, 649 F.2d 1266, 1270 (9th Cir. 1981).

> 1.    Purposeful Direction or Availment

The Ninth Circuit relies on a "sliding scale analysis" to determine whether a defendant's online activities constitute "purposeful direction or availment."  Boschetto v. Hansing, 539 F.3d 1011, 1018 (9th Cir. 2008).  Under that analysis, the court examines "the 'level of interactivity and commercial nature of the exchange of information that occurs on the [defendant's] Web site' to determine if sufficient contacts exist to warrant the exercise of jurisdiction."  Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414, 418 (9th Cir. 1997) (citations omitted).  A defendant who merely maintains a "passive website" and does "nothing to encourage residents of the forum state to access [the] site" will not be subject to jurisdiction on that basis.  Rio Properties, Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1020 (9th Cir. 2000).  Rather, the plaintiff must show "'something more' to indicate that the defendant purposefully (albeit electronically) directed his activity in a substantial way to the forum state."  Cybersell, 130

F.3d at 418; see also Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1156 (9th Cir. 2006) (requiring "something more" than a passive website to confer specific jurisdiction in a trademark infringement action).

District courts in this circuit have generally found that online product sales to residents of the forum are sufficient to satisfy this "something more" requirement in trademark infringement cases. See, e.g., Vanity.com, Inc. v. Vanity Shop of Grand Forks, Inc., 2012 WL 4755041, *4 (N.D. Cal.) ("Vanity Shop argues that merely selling to California customers via its website is insufficient to confer personal jurisdiction.  The Court disagrees."); Smith Enter., Inc. v. Capital City Firearms, 2008 WL 2561882, at *5 (D. Ariz.) (finding purposeful direction where "Defendant maintained an interactive website and consummated over 100 sales" with residents of the forum state); Salu, Inc. v. Original Skin Store, 2008 WL 3863434, at *5 (E.D. Cal.) ("[Defendant's] sales to California customers . . . constituted approximately 14% of its total business.  As such, defendant intentionally engaged in commercial transactions with California residents.").[2]  These courts all concluded that the defendant was subject to personal jurisdiction in the forum even though online sales to residents of the forum made up a relatively small share of the defendant's business.

---

[2] One of the only cases to reach a different conclusion was the case that Plaintiff brought in this district last year.  See Natural Wellness, 2012 WL 216578, at *7 (holding that the defendant's "use of interactive websites is not sufficient to subject [it] to personal jurisdiction in California").  Nevertheless, the court in that case found other grounds to support specific jurisdiction.  Id.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

Here, Defendants concede that California residents make up fourteen percent of their customers and that California sales constitute sixteen percent of their revenue.  This is more than enough to satisfy the purposeful direction prong.  Cf. Vanity.com, 2012 WL 4755041, at *3 (finding specific jurisdiction where defendant's online sales to forum state made up "approximately 0.02% of [] total sales"); Smith Enter., 2008 WL 2561882, at *2 ("2.75% of Defendant's total revenues"); Salu, 2008 WL 3863434, at *5 ("14% of [defendant's] total business"); Starlight Int'l, Ltd. v. Lifeguard Health, LLC, 2008 WL 2899903, at *2 (N.D. Cal.) ("0.24% of sales").

> 2.   Arising from Defendants' Forum-Related Activities

To determine whether the plaintiff's claims arise from the defendant's forum-related activities -- the second prong of the specific jurisdiction test -- courts use a traditional "but for" causation analysis.  Bancroft & Masters, Inc. v. Augusta Nat'l, Inc., 223 F.3d 1082, 1088 (9th Cir. 2000).  The Ninth Circuit has recognized that, in trademark infringement actions, if the defendant's infringing conduct harms the plaintiff in the forum state, this element is satisfied.  Panavision, 141 F.3d at 1322; see also Vanity.com, 2012 WL 4755041, at *4 ("[Plaintiff]'s claims arise out of defendant's forum-related activities because [defendant]'s dealings with California customers enable it to profit from its alleged [trademark infringement].").

Here, Plaintiff alleges that Defendants' alleged infringement led to sales in California that ultimately harmed Plaintiff's business there.  This allegation satisfies the second element of specific jurisdiction.

United States District Court
For the Northern District of California

    3.   Reasonableness

If the court finds that the first two elements of specific jurisdiction are satisfied, the defendant may escape the court's jurisdiction only by showing that other considerations would render jurisdiction unreasonable.  Dole Foods Co., Inc. v. Watts, 303 F.3d 1104, 1114 (9th Cir. 2002) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985)).  To evaluate reasonableness, courts consider several factors, including the potential burden on the defendant, possible conflicts of law, the forum state's interest in adjudicating the dispute, and various other factors to "illuminate the considerations of fairness and due process."  Hedrick v. Daiko Shoji Co., Ltd., 715 F.2d 1355, 1359 (9th Cir. 1983).

Defendants have not shown that this Court's exercise of jurisdiction would be unreasonable here.  Courts in this district have generally found it reasonable to exercise jurisdiction over a foreign defendant on claims arising from that defendant's commercial activity in California.  See, e.g., Vanity.com, 2012 WL 4755041, at *4 ("[B]ecause Vanity Shop has purposefully injected itself in the stream of commerce in California, exercise of specific jurisdiction comports with fair play and substantial justice."); Starlight Int'l, 2008 WL 2899903, at *7 ("As [defendant] has not presented a compelling reason to ignore California's legitimate interest in protecting against alleged violations of a trademark registered to a California company, through products sold to Californians, this factor must swing in [plaintiff]'s favor.").  Thus, Defendants' sales to California

1  customers support specific jurisdiction over Plaintiff's trademark

2  infringement claims.

3  II.   Transfer of Venue

4        A.   Defendants' Request for Transfer

5        Defendants have not established that the Central District of

6  Illinois is a more convenient forum for litigating this dispute.

7  Although Defendants note that two of their non-party witnesses

8  would benefit from a transfer, they fail to explain adequately how

9  these witnesses' testimony is material to this dispute.  <u>See</u>

10 <u>Cochran v. NYP Holdings, Inc.</u>, 58 F. Supp. 2d 1113, 1119 (C.D.

11 Cal. 1998) ("[T]he moving party must demonstrate, through

12 affidavits or declarations containing admissible evidence, who the

13 key witnesses will be and <u>what their testimony will generally</u>

14 <u>include</u>." (emphasis added)).  Moreover, they ignore the fact that

15 Plaintiff's witnesses, who reside in Southern California, would be

16 significantly inconvenienced if this case were transferred to an

17 Illinois court.  Accordingly, Defendants' convenience argument

18 does not support a transfer here.  <u>See</u> <u>Decker Coal Co. v.</u>

19 <u>Commonwealth Edison Co.</u>, 805 F.2d 834, 843 (9th Cir. 1986)

20 (upholding denial of the transfer request where transfer would

21 "merely shift rather than eliminate the inconvenience").

22      Defendants' argument that the interests of justice weigh in

23 favor of transfer here because of judicial vacancies in this

24 district is similarly unavailing.  The First Circuit has

25 specifically rejected this argument in the past, reasoning that

26 "[n]either constitutional nor statutory rights of parties are

27 suspended when there are judicial vacancies in a district."  <u>Coady</u>

28 <u>v. Ashcraft & Gerel</u>, 223 F.3d 1, 11 (1st Cir. 2000) ("While

expressions of concern that the President and Congress fill

existing judicial vacancies are appropriate in other contexts, it

has no place in determining the rights of litigants under 28

U.S.C. § 1404(a), and is not 'in the interest of justice.'"

(citations omitted)).

     B.   Plaintiff's Request for Transfer

    Plaintiff only requested a transfer in the hopes of

forestalling a transfer to the Central District of Illinois.

Because Defendants' request to transfer to that district is

denied, Plaintiff's motion is denied as moot.

CONCLUSION

    For the reasons set forth above, the Court DENIES Defendants'

motion to dismiss or transfer (Docket Nos. 19 & 20) and DENIES

Plaintiff's request to transfer (Docket No. 10).  Defendants'

motion to strike Plaintiff's supporting declarations (Docket No.

32) is also DENIED because the Court does not rely on any of

statements to which Defendants object.  In the future, all

evidentiary objections should be raised in the parties' briefs,

pursuant to Civil Local Rule 7-3.

    IT IS SO ORDERED.


Dated: 1/22/2013

CLAUDIA WILKEN
United States District Judge